# UNITED STATES DISTRICT COURT
## DISTRICT OF NEW MEXICO

JACKIE SAGASTUME,

     Plaintiff,

v.                                                                                          Civ. No. 20-258 MV/GJF

KILOLO KIJAKAZI, *Acting Commissioner*
*of the Social Security Administration*,

     Defendant.

## PROPOSED FINDINGS AND
## RECOMMENDED DISPOSITION

THIS MATTER is before the Court upon Plaintiff Jackie Sagastume's "Brief in Support of Motion to Remand Statement of the Case" [ECF 27] ("Motion"). The Motion is fully briefed. ECF 28 (response); ECF 31 (reply). Having meticulously reviewed the entire record and the parties' briefing, the Court **RECOMMENDS**[1] that the Motion be **GRANTED** and that the Commissioner's final decision be **REVERSED AND REMANDED** *only* on the basis that the ALJ failed to resolve an apparent conflict between the vocational expert's testimony and the Dictionary of Occupational Titles.

## I.    BACKGROUND

Plaintiff was born in 1982. Administrative Record ("AR") at 28. Plaintiff lives with her husband and two children. *Id.* at 593. Before applying for benefits, Plaintiff worked full-time as a legal assistant. *Id.* at 590. Plaintiff applied for Disability Insurance Benefits ("DIB") in February 2017, *id.* at 719–20, and for Supplemental Security Income ("SSI") in March 2019. *Id.* at 728–37.

---

[1] These Proposed Findings and Recommended Disposition are submitted pursuant to the presiding judge's Order of Reference, which referred the case to the undersigned "to recommend to the Court an ultimate disposition of the case." ECF 18.

Plaintiff contends that she can no longer work as of September 2016 due to her alleged kidney related impairments, diabetes, anxiety, neuropathy, depression, obesity, carpal tunnel syndrome, and back problems. *Id.* at 608–09. Plaintiff's application for DIB was denied initially and on reconsideration. *Id.* at 622, 644. At Plaintiff's request, Administrative Law Judge Ann Farris held a hearing on this matter in April 2019. *Id* at 586. Because Plaintiff's application for SSI was "escalated to the hearing level," the ALJ reviewed the applications for both DIB and SSI. *Id.* at 16. Following the hearing, the ALJ found that Plaintiff was not disabled as defined by the Social Security Act. *Id.* at 30. After the Appeals Council denied her request for review, Plaintiff timely appealed the ALJ's decision to this Court. *Id.* at 1, 3; ECF 1.

## II.   PLAINTIFF'S CLAIMS

Plaintiff contends that the ALJ made four errors, each of which constitute an independent basis to reverse and remand the ALJ's decision. First, Plaintiff argues that the ALJ failed to resolve an apparent conflict between the vocational expert's testimony on the jobs that an individual with Plaintiff's residual functional capacity ("RFC") could perform and the Dictionary of Occupational Titles ("DOT"). ECF 27 at 5.[2] Second, Plaintiff asserts that the ALJ failed to properly consider whether she could sustain competitive work activity for at least twelve months. *Id.* at 9–12. Third, Plaintiff avers that the ALJ erred by not accounting for the mental limitations she found at step three of the sequential evaluation process in her RFC finding. *Id.* at 12–17. Last, Plaintiff says that the ALJ failed to properly incorporate her alleged carpal tunnel syndrome in the RFC. *Id.* at 17–18.

---

[2] The residual functional capacity represents the most an individual can do despite her exertional and/or nonexertional limitations. 20 C.F.R. § 404.1545(a)(1). In making this assessment, the ALJ considers how a claimant's impairments (and any related symptoms) affect what a claimant can do in a work setting. *Id.* For the sake of expediency, the Court omits parallel citations to 20 C.F.R. § 416 *et seq.* regulating SSI.

### III. STANDARD OF REVIEW

#### A.  Substantial Evidence

The Court's review of an ALJ's decision is both legal and factual. *See Maes v. Astrue*, 522 F.3d 1093, 1096 (10th Cir. 2008) ("The standard of review in a social security appeal is whether the correct legal standards were applied and whether the decision is supported by substantial evidence." (citing *Hamilton v. Sec'y of Health & Human Servs.*, 961 F.2d 1495, 1497–98 (10th Cir. 1992))).

In determining whether the correct legal standards were applied, the Court reviews "whether the ALJ followed the specific rules of law that must be followed in weighing particular types of evidence in disability cases." *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007) (quoting *Hackett v. Barnhart*, 395 F.3d 1168, 1172 (10th Cir. 2005)). The Court may reverse and remand if the ALJ failed to "apply correct legal standards" or "show ... [she] has done so." *Hamlin v. Barnhart*, 365 F.3d 1208, 1214 (10th Cir. 2004) (citing *Winfrey v. Chater*, 92 F.3d 1017, 1019 (10th Cir. 1996)).

The Commissioner's findings "as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g) (emphasis added). "Under the substantial-evidence standard, a court looks to an existing administrative record and asks whether it contains 'sufficien[t] evidence' to support the agency's factual determinations." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (brackets in original) (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). "And ... the threshold for such evidentiary sufficiency is not high. Substantial evidence, [the Supreme] Court has said, is more than a mere scintilla." *Id.* (internal quotation marks and citation omitted). "It means—and means only—such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (internal quotation marks omitted). "A finding of 'no

substantial evidence will be found only whether there is a conspicuous absence of credible choices or no contrary medical evidence.'" *Trimiar v. Sullivan*, 966 F.2d 1326, 1329 (10th Cir. 1992) (quoting *Hames v. Heckler*, 707 F.2d 162, 164 (5th Cir. 1983)) (internal quotation marks omitted).

Under this standard, the Court should still meticulously review the entire record, but it may not "reweigh the evidence nor substitute [its] judgment for that of the agency." *Newbold v. Colvin*, 718 F.3d 1257, 1262 (10th Cir. 2013) (quoting *Branum v. Barnhart*, 385 F.3d 1268, 1270 (10th Cir. 2004)); *Hamlin*, 365 F.3d at 1214. Indeed, the Court is to "review only the sufficiency of the evidence, not its weight." *Oldham v. Astrue*, 509 F.3d 1254, 1257 (10th Cir. 2007) (emphasis in original). Therefore, "[t]he possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's findings from being supported by substantial evidence." *Lax*, 489 F.3d at 1084 (quoting *Zoltanski v. F.A.A.*, 372 F.3d 1195, 1200 (10th Cir. 2004)). Furthermore, the Court "may not displace the agency's choice between two fairly conflicting views, even though the court would justifiably have made a different choice had the matter been before it de novo." *Id.* (quoting *Zoltanski*, 372 F.3d at 1200) (brackets omitted).

**B.  Sequential Evaluation Process**

To qualify for disability benefits, a claimant must establish that she is unable to "engage in *any* substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A) (emphasis added).

The Social Security Administration ("SSA") has devised a five-step sequential evaluation process to determine disability. *See Barnhart v. Thomas*, 540 U.S. 20, 24-25 (2003) (citing 20 C.F.R. § 416.920). The claimant bears the burden of proof at steps one through four. *See Bowen v. Yuckert*, 482 U.S. 137, 146 & n.5 (1987); *Grogan v. Barnhart*, 399 F.3d 1257, 1261 (10th Cir. 2005);

*Williams v. Bowen*, 844 F.2d 748, 750-51, 751 n.2 (10th Cir. 1988). In the first four steps, the claimant must show (1) that "[s]he is not presently engaged in substantial gainful activity," (2) that "[s]he has a medically severe impairment or combination of impairments," and either (3) that the impairment is equivalent to a listed impairment or (4) that "the impairment or combination of impairments prevents [her] from performing [her] past work." *Williams*, 844 F.2d at 750-51; *Grogan*, 399 F.3d at 1261.

If the claimant has advanced through step four, the burden of proof then shifts to the Commissioner to show that the claimant nonetheless retains sufficient functional capacity "to perform other work in the national economy in view of [her] age, education, and work experience." *Yuckert*, 482 U.S. at 142, 146 n.5.

## IV. THE ALJ'S DECISION AND FINDINGS

### A. Steps One Through Three

At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since her alleged onset date of September 2016. *Id.* At step two, the ALJ determined that Plaintiff was severely impaired by degenerative disc disease with scoliosis, diabetes mellitus with peripheral neuropathy, osteomyelitis of the right ankle and foot, carpal tunnel syndrome, and grief reaction with major depression and anxiety. *Id.* at 18–19. At step three, the ALJ concluded that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of a "listed" impairment. *Id.* at 20.[3]

---

[3] "Listed impairments" refer to certain impairments identified in the regulations. 20 C.F.R. § 404.1520(d). When the SSA finds that any of a claimant's impairments meets or medically equals one of those "listed impairments," the SSA will find the claimant disabled without considering the claimant's "age, education, and work experience." *Id.*

**B. Step Four[4]**

After considering the record and Plaintiff's hearing testimony, the ALJ found that Plaintiff had the exertional RFC to "perform less than a full range of sedentary work." *Id.* at 22. Nonexertionally, the ALJ found that Plaintiff was limited to "simple work-related decisions with few workplace changes." *Id.* The ALJ explained that although Plaintiff's "medically determinable impairments could reasonably be expected to cause [her] alleged symptoms," Plaintiff's "statements concerning the intensity, persistence and limiting effects of [those] symptoms [were] not entirely consistent with the medical evidence and other evidence in the record." *Id.* at 23. The ALJ considered Plaintiff's statements, the objective medical evidence, and the medical opinion evidence. *Id.* at 26–28.

Plaintiff testified that she was often depressed and anxious, having trouble being around others and experiencing frequent panic attacks. *Id.* at 22. Plaintiff further complained that she had a poor memory and difficulty concentrating. *Id.* Plaintiff acknowledged that, despite these alleged limitations, she performed a variety of household tasks such as mopping, vacuuming, and yard work. *Id.* at 26 (citing *id.* at 941). Plaintiff further testified that she visits with friends and does not have difficulty being around others. *Id.* (citing *id.* at 763–64, 790). Plaintiff also reported that she enjoys hobbies such as writing poetry and coloring. *Id.* (citing *id.* at 788, 797).

The ALJ then discussed the objective medical evidence. Plaintiff suffered from major depression and anxiety, related to her daughter's death. *Id.* at 25 (citing *id.* at 1831–41). Plaintiff was consequently prescribed amitriptyline and Prozac. *Id.* (citing *id.* at 1040, 1575). Providers

---

[4] The Tenth Circuit has described step four of the sequential evaluation process as consisting of three distinct phases. *Winfrey*, 92 F.3d at 1023. In phase one, the ALJ evaluates a claimant's physical and mental RFC. *Id.* In phase two, the ALJ assesses the physical and mental demands of the claimant's past relevant work. *Id.* Last, the ALJ applies the phase one findings to the phase two findings to determine whether, given the claimant's RFC, she could meet the physical and/or mental demands of her past relevant work. *Id.*

observed that Plaintiff appeared anxious and avoided eye contact. *Id.* Plaintiff told her providers that she lacked the desire to leave her bed. *Id.* (citing 1557–59). The ALJ, however, found that there was little evidence that Plaintiff sought consistent mental health treatment or suffered from regular panic attacks. *Id.*

The ALJ next considered the medical opinion evidence. State agency consultants Mark McGaughey, PhD, Richard Sorenson, PhD, and Cal VanderPlate, PhD, opined on how Plaintiff's mental symptoms would impair her ability to perform certain work-related functions. At the initial level, Dr. McGaughey concluded that there was "insufficient evidence to determine current symptom severity." *Id.* at 616. On reconsideration, Dr. Sorensen opined that Plaintiff could "understand, remember, and carry out simple instructions, make simple decisions, attend and concentrate for two hours at a time, interact adequately with co-workers and supervisors, and respond appropriately to changes in a routine work setting." *Id.* at 641. Dr. Sorensen recommended that Plaintiff have only limited interaction with the public. *Id.* Dr. VanderPlate affirmed Dr. Sorensen's opinion. *Id.* at 1069–70.

The ALJ gave Dr. McGaughey's opinion "little weight" because she found that the mental health treatment notes in the record were sufficient to "find that [Plaintiff] ha[d] severe mental impairments with the corresponding mental limitations as detailed in the" RFC. *Id.* at 28. The ALJ gave Drs. Sorensen and VanderPlate's opinions "some weight." *Id.* at 26. The ALJ reasoned that although Drs. Sorensen and VanderPlate specialized in psychology, their opinions were only "somewhat consistent with the record." *Id.*

Based on Plaintiff's RFC, the ALJ concluded that Plaintiff could not perform her past relevant work as a legal assistant[5] because Plaintiff was "unable to perform skilled work under her

---

[5] A legal secretary or assistant "[p]repares legal papers and correspondence of legal nature, such as summonses, complaints, motions, and subpoenas, using typewriter, word processor, or personal computer. May review law journals

residual functional capacity." AR at 28. The ALJ continued to step five to determine whether Plaintiff could work other representative occupations that exist in significant numbers in the national economy. *Id.*

### C. Step Five

The ALJ began by noting that Plaintiff was limited to unskilled work subject to the additional limitations she described in the RFC and asked the vocational expert whether jobs existed in significant numbers in the national economy that an individual with Plaintiff's limitations could perform. AR at 28. Based on the vocational expert's testimony, the ALJ found that Plaintiff could perform the representative occupations of addresser (4,450 national jobs),[6] document preparer (46,563 national jobs),[7] and eyeglass frame polisher (6,436 national jobs).[8] *Id.* at 29. Plaintiff's counsel objected to the ALJ's reliance on the vocational expert's testimony. Specifically, counsel argued that there was a conflict between (1) the vocational expert's testimony that these jobs could

and other legal publications to identify court decisions pertinent to pending cases and submit articles to company officials." 201.362-010 LEGAL SECRETARY, Dictionary of Occupational Titles, 1991 WL 671667.

[6] An addresser "[a]ddresses by hand or typewriter, envelopes, cards, advertising literature, packages, and similar items for mailing. May sort mail." 209.587-010 ADDRESSER, Dictionary of Occupational Titles, 1991 WL 671797. Such a position requires a reasoning level of two. *Id.*

[7] A document preparer, microfilming "[p]repares documents, such as brochures, pamphlets, and catalogs, for microfilming, using paper cutter, photocopying machine, rubber stamps, and other work devices: Cuts documents into individual pages of standard microfilming size and format when allowed by margin space, using paper cutter or razor knife. Reproduces document pages as necessary to improve clarity or to reduce one or more pages into single standard microfilming size, using photocopying machine. Stamps standard symbols on pages or inserts instruction cards between pages of material to notify MICROFILM-CAMERA OPERATOR … of special handling, such as manual repositioning, during microfilming. Prepares cover sheet and document folder for material and index card for company files indicating information, such as firm name and address, product category, and index code, to identify material. Inserts material to be filmed in document folder and files folder for processing according to index code and filming priority schedule." 249.587-018 DOCUMENT PREPARER, MICROFILMING, Dictionary of Occupational Titles, 1991 WL 672349. This occupation requires a reasoning level of three. *Id.*

[8] An eyeglass frame polisher "[p]olishes plastic eyeglass frames and temple pieces to remove scratches and pit marks, using polishing wheel: Applies abrasive compound to wheel surface, using brush. Starts machines and holds and turns frame parts against wheel to polish parts and remove defects. Inspects and feels polished parts to verify removal of flaws. Presses sandpaper against polishing wheel to remove abrasive residue in preparation for next sequence." 713.648-038 POLISHER, EYEGLASS FRAMES, Dictionary of Occupational Titles, 1991 WL 679267. This position has a reasoning level of two. *Id.*

be performed by someone limited to "simple work-related decisions with few workplace changes" and (2) the DOT's description of these jobs as requiring reasoning levels of two or three. *See id.* at 849. In her hearing decision, the ALJ overruled Plaintiff's objection. *Id.* The ALJ interpreted Plaintiff's objection as arguing that occupations with a reasoning level of two or three are "essentially semi-skilled work." *Id.* at 29. The ALJ concluded that because each of the occupations identified were considered "unskilled" by the DOT, the vocational expert's testimony did not conflict with the RFC finding that Plaintiff was limited to unskilled work. *Id.* at 29.

## V.   DISCUSSION

The Court recommends that this case be remanded so that the ALJ on review can resolve an apparent conflict between (1) the RFC finding on which the vocational expert's testimony relied and (2) the DOT. The Court rejects Plaintiff's other claims of error.

### A.   The ALJ Erred by Not Eliciting Additional Information from the Vocational Expert to Resolve an Apparent Conflict

#### 1.   Parties' Arguments

Plaintiff argues that the ALJ erred at step five of the sequential evaluation process by failing to resolve an apparent conflict. ECF 27 at 5–9. As discussed in Section IV(C) above, the three jobs that the vocational expert testified could be performed by someone with Plaintiff's RFC were also jobs that the DOT classified as having reasoning level of two or three. AR at 29. Plaintiff asserts there was an apparent conflict because (1) the vocational expert testified that these jobs could be performed by someone limited to *simple* work-related decisions (with few workplace changes) but (2) the DOT establishes that such jobs require workers to follow *detailed* instructions.  ECF 27 at 5–9.  The ALJ therefore erred, Plaintiff reasons, because she was required to resolve all apparent conflicts between (1) the RFC on which the vocational expert's testimony relied and (2) the DOT. *Id.*

In response, the Commissioner observes that there is no Tenth Circuit precedent holding that level two reasoning is inconsistent with a limitation to simple work-related decisions. ECF 28 at 7. The Commissioner further notes that the Tenth Circuit has *only* held that reasoning level three *seemed* to conflict with an RFC limitation of "simple and routine work tasks," not "simple work-related decisions." *Id.* at 8 (citing *Hackett v. Barnhart*, 395 F.3d 1168, 1176 (10th Cir. 2005)). Thus, the Commissioner argues, "the Court should flatly reject Plaintiff's argument." ECF 28 at 7. In the alternative, if the Court determines that there *was* an apparent conflict, the Court should conclude that the apparent conflict was adequately resolved by the ALJ's on-the-record consideration (and rejection) of Plaintiff's objection to the vocational expert's testimony. *Id.* at 7–8.

2. <u>Relevant Substantive Law</u>

At step five, in deciding whether a claimant can adjust to other work, the SSA is responsible for supplying evidence on work that exists in significant numbers in the national economy that the claimant can do, considering her RFC. 20 C.F.R. § 404.1512(b)(3). The ALJ need not account for whether work exists in the geographical area in which the claimant resides, whether a specific job vacancy exists, or even whether the claimant would be hired if she applied to one of the identified occupations. 20 C.F.R. § 404.1566(a)(1)-(3). But the SSA will not find non-disability based on jobs that exist "only in very limited numbers in relatively few locations outside the region where [the claimant] live[s]." 20 C.F.R. § 404.1566(b). For this determination, the SSA may rely on publications such as the DOT. 20 C.F.R. § 404.1566(d)(1)-(5). In addition, the SSA may rely on vocational or other expert testimony. 20 C.F.R. § 404.1566(e).

But not everything a vocational "expert says will suffice to meet the agency's burden of proof." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1162 (2019) (Gorsuch, J., dissenting). Indeed, the

Tenth Circuit has held "before an ALJ may rely on expert vocational evidence as substantial evidence to support a determination of nondisability, the ALJ must ask the expert how his or her testimony as to the exertional requirement of identified jobs corresponds with the [DOT] and elicit a reasonable explanation for any discrepancy on this point." *Haddock v. Apfel*, 196 F.3d 1084, 1086–87 (10th Cir. 1999). The Tenth Circuit later clarified that *Haddock*'s holding extends to nonexertional limitations. *See Hackett v. Barnhart*, 395 F.3d 1168, 1175 (10th Cir. 2005). Put simply, an ALJ is required to elicit a reasonable explanation from the vocational expert that resolves any "apparent conflict" between (1) the RFC that the vocational expert relied on and (2) the DOT. *Id.* at 1174–76; *see also* SSR 00-4p, 2000 WL 1898704, at *2 ("When there is an apparent unresolved conflict between the [vocational expert] evidence and the DOT, the adjudicator must elicit a reasonable explanation for the conflict before relying on the [vocational expert] evidence to support a determination or decision about whether the claimant is disabled.").

3. The ALJ Failed to Elicit Additional Testimony from the Vocational Expert to Resolve the Apparent Conflict

The ALJ found that Plaintiff was limited to simple work-related decisions. AR at 22. When posed with a hypothetical individual with Plaintiff's RFC, the vocational expert testified that the individual could work the representative occupations of addresser, document preparer, and eyeglass frame polisher. *Id.* at 605. Following this testimony, the ALJ asked no further questions. *Id.* at 604–05.

The DOT identifies document preparer as having a level three reasoning level. 249.587-018 DOCUMENT PREPARER, MICROFILMING, Dictionary of Occupational Titles, 1991 WL 672349.[9] Microfilm document preparers must thus be able to "[a]pply commonsense understanding

---

[9] The Court's analysis is limited to the document preparer job, as the Court concludes that remand is appropriate based on the ALJ's error solely with respect to this job. In addition, the Court does not engage in a harmful error analysis because, even if there was not an apparent conflict between the RFC and the vocational expert's testimony on the

to carry out instructions furnished in written, oral, or diagrammatic form. Deal with problems involving several concrete variables in or from standardized situations." *Id.*[10]

The Court perceives an apparent conflict between the level three reasoning requirement of the document preparer occupation and the RFC. In *Hackett*, the Tenth Circuit found that level three reasoning *appeared* inconsistent with an RFC limitation to "simple and routine work tasks." 395 F.3d at 1168 (citing *Lucy v. Chater*, 113 F.3d 905, 909 (8th Cir. 1997)). Later, in *Paulek v. Colvin*, the Tenth Circuit extended *Hackett*'s holding to "carrying out simple instructions." 662 F. App'x 588, 594 (10th Cir. 2016) (unpublished); *see also Stokes v. Astrue*, 274 Fed. Appx. 675, 684 (10th Cir. 2008) (unpublished) (stating that "[i]n *Hackett v. Barnhart*, we held that a limitation 'for simple and routine work tasks' was inconsistent with the demands of level-three reasoning" (citing *Hackett*, 395 F.3d at 1176)). An apparent conflict is therefore raised when (1) the vocational expert testifies that a document preparer job can be performed by someone limited to *simple* work-related decisions and (2) the DOT declares that a document preparer must be able to not only carry out "*detailed* but uninvolved" instructions—but to "[a]pply commonsense understanding to carry out instructions" and "[d]eal with problems involving several concrete variables in or from standardized situations."  Although the Tenth Circuit has not yet had the opportunity to definitively declare whether there is an apparent conflict between a limitation to "simple work-related decisions" and level three reasoning, the consensus at the district court level in the Tenth Circuit

---

addresser and eyeglass frame polisher positions, (1) the Commissioner did not brief the issue of harmless error, *see* ECF 28 at 5–9, and (2) the combined number of remaining national jobs for those occupations (10,886) may not be "significant" in the context of step five harmless error analysis, *see Garcia v. Kijakazi*, Civ. No. 20-381 GJF, 2021 WL 3860352, at *6 (D.N.M. Aug. 30, 2021) (collecting cases).

[10] For reference, level two positions require the ability to "[a]pply commonsense understanding to carry out detailed but uninvolved written or oral instructions. Deal with problems involving few concrete variables in or from standardized situations." APPENDIX C – COMPONENTS OF THE DEFINITION TRAILER, Dictionary of Occupational Titles, 1991 WL 688702. And level one occupations require the ability to "[a]pply commonsense understanding to carry out simple one- or two-step instructions. Deal with standardized situations with occasional or no variables in or from these situations encountered on the job." *Id.*

appears to be that there is such a conflict. *See, e.g.*, *Long v. Kijakazi*, Case No. CIV-20-658-SM, 2021 WL 3826478, at *3 (W.D. Okla. Aug. 26, 2021); *J.A. v. Saul*, Case No. 20-1290-SAC, 2021 WL 2822534, *4 (D. Kan. July 7, 2021); *Ammons v. Saul*, CV 18-1212 JHR, 2020 WL 1434247, at *4 (D.N.M. Mar. 23, 2020);[11] *Mitchell v. Berryhill*, No. 18-cv-136-KRS, 2018 WL 6259233, at *3–4 (D.N.M. Nov. 30, 2018); *Cook v. Colvin*, Case No. CIV-14-392-SPS, 2016 WL 1175059, at *3–4 (E.D. Okla. Mar. 24, 2016).[12] In fact, the Commissioner cites no authority (and the Court is aware of none) from the Tenth Circuit (or from the lower courts therein) standing for the proposition that there is no apparent conflict between an RFC limitation to simple work-related decisions and level three reasoning. *See* ECF 28 at 5–9.

For her part, the Commissioner stresses that the Tenth Circuit in *Hackett* held only that "'simple and routine work tasks *seemed* to be inconsistent with the demands" of level three reasoning occupations. ECF 28 at 7 (emphasis in original). The Commissioner's emphasis on the Tenth Circuit's use of the word "seems" assumes too much. *Hackett* did not lay down a bright-line rule that there are certain level three reasoning occupations that claimants with certain limitations are inherently or per se precluded from performing. *See* 395 F.3d at 1176. Instead, *Hackett* expressed the less ambitious principle that the requirements of certain occupations *appear* to conflict with certain limitations—and that this *appearance* of conflict requires the ALJ to elicit additional testimony from the vocational expert and receive a reasonable explanation. *See id.* at 1175–76 (observing that both the Tenth Circuit's prior holding in *Haddock* and SSR 00-4p require

---

[11] Notably, *Ammons* also involved the same document preparer occupation. *Ammons*, 2020 WL 1434247, at *4.

[12] Courts outside the district have similarly held that there was an apparent conflict between level three reasoning and a limitation to simple work-related decisions. *See, e.g.*, *Ahren v. Comm'r of Social Security*, Case No. 18-CV-381-SVK, 2018 WL 6531891, at *5 (N.D. Cal. Oct. 30, 2018); *Roxanne R. v. Berryhill*, No. 18 C 5484, 2019 WL 2502033, at *5 (N.D. Ill. June 17, 2019); *but see Simons v. Comm'r, Social Security*, Civil Case No. RDB-17-1837, at *3–4 (D. Md. July 13, 2018) (collecting cases and observing that while courts in the Tenth and Ninth Circuits have held that there is an apparent conflict between level three reasoning and a limitation to "simple, work-related decisions," courts in the Seventh and Eighth Circuits have held that there is no such apparent conflict).

"a reasonable explanation for conflicts between a [vocational expert's] testimony and the DOT").[13]

Finally, the Court disagrees with the Commissioner's contention that the ALJ adequately resolved the apparent conflict. *Haddock* requires an ALJ to "elicit a reasonable explanation" from the *vocational expert*. 196 F.3d at 1087; *see also Hackett*, 395 F.3d at 1175 (same); SSR 00-4p (same). And here the ALJ elicited no such explanation. AR at 604–05. Moreover, the ALJ's consideration of Plaintiff's objection did not satisfy *Haddock*'s dictate because the ALJ was required to *elicit additional explanation* from the vocational expert, not merely to *consider* whether a conflict existed. *See Haddock*, 193 F.3d at 1087 ("[T]he ALJ must investigate and elicit a reasonable explanation for any conflict between the [DOT] and expert testimony before the ALJ may rely on the expert's testimony as substantial evidence to support a determination of nondisability. One reasonable explanation would be that the job the [vocational expert] is testifying about is not included in the [DOT], but is documented in some other acceptable source … Another valid explanation would be that a specified number or percentage of a particular job is performed at a lower RFC level than the [DOT] shows the job generally to require.").

In short, the Court grants remand in this case because there was an apparent conflict between (1) the RFC on which the vocational expert based his testimony and (2) the DOT. The ALJ was required to, but did not, elicit additional testimony from the vocational expert resolving the conflict. On remand, the ALJ should seek additional testimony from the vocational expert

---

[13] The Court notes that the ALJ sought and received the vocational expert's express assurance that if his testimony was "not consistent with the Dictionary of Occupational Titles" that he would advise the ALJ "of that fact." AR at 603. Arguably, such an express assurance would satisfy the ALJ's duty to investigate whether the vocational expert's testimony was consistent with the DOT. But as the Eleventh Circuit has recently held "[a]ccording to SSR 00-4p, the ALJ has an affirmative duty to identify and resolve apparent conflicts between a [vocational expert's] testimony and information in the DOT." *Peterson v. Comm'r of Social Security*, No. 21-10086, 2021 WL 3163662, at *2 (11th Cir. July 27, 2021). Importantly, SSR 00-4p does not merely require "the ALJ to ask the vocational expert whether his testimony was consistent with the DOT." *Id.* (citing *Washington v. Comm'r of Soc. Sec.*, 906 F.3d 1353, 1361 (11th Cir. 2018)). "Instead," SSR 00-4p imposes upon the "ALJ an affirmative obligation to identify any apparent conflicts and to resolve them … an ALJ's failure to discharge that duty means that the ALJ's decision is not supported by substantial evidence." *Id.*

explaining whether Plaintiff can perform the jobs identified, particularly in light of Plaintiff's RFC limitation to simple work-related decisions and the DOT's reasoning levels.

**B. The ALJ Did Not Err in Concluding That Plaintiff Could Sustain Competitive Work Activity**

Plaintiff argues that the ALJ should have concluded that Plaintiff was disabled between July 2018 and 2019 because she was hospitalized for 32 days during that time and was thus unable to engage in substantial gainful activity during that period. ECF 27 at 9–11. The Court disagrees.

"The law defines disability as the inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of *not less than 12 months*." 20 C.F.R. § 404.1505(a) (emphasis added). "Substantial gainful activity" means work that "(a) [i]nvolves doing significant and productive physical or mental duties; and (b) [i]s done (or intended) for pay or profit." 20 C.F.R. 404.1510(a)-(b). At the administrative level, the evidence relevant to a disability determination is only that which relates to the period "on or before the date of the [ALJ's] hearing decision." *Hargis v. Sullivan*, 945 F.2d 1482, 1493 (10th Cir. 1991) (holding that "the proffered evidence" must "relate to the time period for which benefits were denied"); *c.f.* 20 C.F.R. § 404.970(c) (stating that the Appeals Council will not consider evidence submitted after the ALJ's hearing decision if that evidence "does not relate to the period on or before the date of the administrative law judge hearing decision.").

The record before the ALJ did not reflect that Plaintiff was unable to perform substantial gainful activity over a period "*not less than* 12 months." 20 C.F.R. § 404.1505(a) (emphasis added). The ALJ made her decision on June 5, 2019, meaning neither the ALJ nor the Appeals Council was required to consider evidence relating to any period *after* that date. 20 C.F.R. § 404.970(c). A timeline of Plaintiff's hospitalizations between July 2018 and August 2019 is helpful:

- admitted for a fever between July 27, 2018, and July 29, 2018, *id.* at 382–85.
- admitted for right foot pain and possible sepsis between September 11, 2018 and September 18, 2018, *id.* at 378;
- admitted for foot surgery between December 6, 2018, and December 13, 2018; *id.* at 58–65;
- admitted for sepsis treatment between August 1, 2019, to August 7, 2019, *id.* at 44–57;
- admitted for urinary tract infection symptoms on August 12, 2019, AR at 39;

Because the August 2019 hospitalizations occurred *after* June 5, 2019, the date of the ALJ's decision, they were not properly before the SSA for review. 20 C.F.R. § 404.970(c). Thus, during the relevant portion of the thirteen-month period identified, Plaintiff spent a total of only 19 days in the hospital.  Her hospitalization history, therefore, is insufficient to show that she had disabling impairments that "ha[ve] lasted or c[ould] be expected to last for a continuous period of not less than 12 months." 20 C.F.R. § 404.1505 (a).[14] Consequently, the Court holds that substantial evidence supports the ALJ's finding that Plaintiff was not disabled between July 2018 and 2019.

### C.  The ALJ Did Not Err by Not Including Every Step Three Finding in the RFC

"When evaluating a mental impairment at step three, the ALJ utilizes the psychiatric-review technique described in 20 C.F.R. § 404.1520a." *Beasley v. Colvin*, 520 F. App'x 748, 754 (10th Cir. 2013). This technique requires an ALJ to assess "four broad functional areas:" understanding, remembering, or applying information; interacting with others; concentrating, persisting, or maintaining pace; and adapting and managing oneself. 20 C.F.R. § 404.1520a(3)-(4). At step three, the ALJ found that Plaintiff had moderate limitations in "concentrating, persisting, or maintaining pace," and in "adapting or managing" herself. AR at 21–22. Plaintiff argues that the ALJ was

---

[14] Plaintiff also argues that the ALJ should have found that she could not have engaged in substantial gainful activity for a twelve-month period because her kidney impairments precluded her from engaging in such work. ECF 27 at 10–11. Plaintiff, however, advances no argument that the ALJ made either a factual or a legal error with respect to her consideration of these alleged impairments. *See id.* Rather, Plaintiff asserts that the ALJ made the wrong determination in finding that these alleged impairments were not disabling. *See id.* But agreeing with that assertion would require the Court to engage in reweighing of the evidence, which the Court is prohibited from doing. *Newbold v. Colvin*, 718 F.3d 1257, 1262 (10th Cir. 2013).

required to account for these step three mental limitations in her RFC assessment. ECF 27 at 13–16. The step three assessment, however, is not equivalent to an "RFC assessment." SSR 96-8p, 1996 WL 374164, at *4. Put otherwise, an ALJ's step three social functioning analysis "does not necessarily translate to a work-related functional limitation for the purposes of the RFC assessment." *Beasley*, 520 F. App'x at 754.

The Tenth Circuit's guidance in *Vigil v. Colvin*, 805 F.3d 1199, 1204 (10th Cir. 2015), is instructive. In that case, the ALJ found at step three that the plaintiff had a moderate limitation in maintaining "concentration, persistence, and pace." *Id.* At step four, the ALJ acknowledged that the plaintiff had "some problems with concentration, persistence, and pace" but that the record reflected that the plaintiff was able to perform at least "simple tasks." *Id.* Accordingly, the Tenth Circuit held that "the ALJ accounted for [the plaintiff's] moderate concentration, persistence, and pace problems in his RFC assessment by limiting him to unskilled work." *Id.*

Like *Vigil*, the ALJ here found that Plaintiff could perform unskilled work by finding that she was limited to simple work-related decisions with few workplace changes. AR at 28, 604 (vocational expert observing that the RFC as worded limited Plaintiff to sedentary and unskilled work).[15] Also like *Vigil*, the ALJ performed a more detailed analysis at step four and found that the record supported the "mental health limitations in the residual functional capacity." AR at 26–27. The ALJ for instance observed that there was limited evidence of mental health treatment and that providers reported that Plaintiff was alert, oriented, well-groomed, and cooperative with a good fund of knowledge, intact memory, logical thoughts, and "intact judgment/insight." *Id.* (citing *id.*

---

[15] "Unskilled work is work which needs little or no judgment to do *simple duties* that can be learned on the job in a short period of time … [A] person can usually learn to do the job in 30 days, and little specific vocational preparation and judgment are needed. A person does not gain work skills by doing unskilled jobs." 20 C.F.R. § 404.1568(a) (emphasis added). In contrast, semi-skilled work "is work which needs some skills but does not require doing more complex work duties. Semi-skilled jobs may require alertness and close attention … [A] job may be classified as semi-skilled where coordination and dexterity are necessary." 20 C.F.R. § 404.1568(b).

at 861, 938–47, 1025, 1088, 1110, 1429, 1440). The ALJ also considered Plaintiff's testimony that she could go out alone, take public transportation, shop in stores, pay bills and count change, and enjoyed writing poetry and coloring. *Id.* (citing *id.* at 763, 765, 798).

Similarly, because the ALJ "detailed how the medical evidence ... translated to" Plaintiff's RFC, the Court further concludes that the ALJ reasonably accounted for Plaintiff's moderate limitation in adapting and managing herself. *See Bales v. Colvin*, 576 F. App'x 792, 797 (10th Cir. 2014) (unpublished) ("Under these circumstances, we see no error in the ALJ not importing [plaintiff's] limitations identified generally [at step three] into the more detailed RFC determination."). In sum, the ALJ did not err by not specifically accounting for each of the limitations she identified at step three in the RFC because she explained how the evidence supported the RFC and because she limited Plaintiff to essentially unskilled work. *See id.*; *Vigil*, 805 F.3d at 1204; *see also Smith v. Colvin*, 821 F.3d 1264, 1269 (10th Cir. 2016) (noting that under Tenth Circuit precedent an ALJ sufficiently accounts for moderate limitations by limiting a claimant to "particular kinds of work activity" (citing *Vigil*, 805 F.3d at 1204)).

### D.  The ALJ Did Not Err in Considering Plaintiff's Carpal Tunnel Syndrome

Plaintiff argues that the ALJ made two errors in assessing the limiting effect of her carpal tunnel syndrome. First, Plaintiff asserts that the RFC limitation to "frequent" fingering and handling was insufficient to account for the limiting effect of her symptoms. ECF 27 at 16–18. Second, Plaintiff contends that the ALJ was required to further develop the record on the limiting effect of Plaintiff's alleged carpal tunnel syndrome. *Id.* at 18.

The ALJ found that Plaintiff was severely impaired by "status post carpal tunnel syndrome releases." AR at 19. "Once an impairment is determined to be severe, it must be reflected in the RFC." *Beasley v. Colvin*, 520 F. App'x 748, 754 (10th Cir. 2013) (unpublished) (citing *Hargis v.*

*Sullivan*, 945 F.2d 1482, 1488 (10th Cir. 1991)). A finding that an impairment is severe at step two, however, "is not determinative of the claimant's RFC and cannot substitute for a proper step-four analysis." *Johnson v. Berryhill*, 679 F. App'x 682, 686–87 (10th Cir. 2017) (unpublished) (citing *Oldham v. Astrue*, 509 F.3d 1254, 1257 (10th Cir. 2007)). It is well-established that step two findings do not equate to an RFC limitation because the showing required at step two is "de minimis" and "does not account for the ALJ's assessment, at step four, of a claimant's ability to work at a given exertional level." *Id.* (citing 20 C.F.R. § 404.1520(e)). In other words, severe impairments must be reflected in the RFC but a finding that an impairment is severe is not the same as finding that Plaintiff cannot work or that the impairment is even particularly limiting.

Here, the ALJ's conclusion that Plaintiff was limited to "frequent" handling and fingering sufficiently accounted for the ALJ's step two finding that Plaintiff's carpal tunnel syndrome was a severe impairment. As Plaintiff notes, "frequent" in the Social Security context is a term of art, meaning "occurring from one-third to two-thirds of the time." SSR 83-10, 1983 WL 31251, at *6. Plaintiff is mistaken, however, in saying that a limitation to "frequent" is the same as no limitation. In contrast to "frequent," "[a]n activity or condition is considered 'constant' when it exists two-thirds or more of the time." *Carson v. Barnhart*, 140 F. App'x 29, 37 (10th Cir. 2005) (unpublished). The ALJ observed that after a 2017 hand surgery, Plaintiff "had normal motion of the fingers with the ability to make a tight fist with each hand" and that prior to the surgery Plaintiff "had normal wrist motion." AR at 24–25. In her more detailed RFC analysis, the ALJ properly accounted for the limiting effect of Plaintiff's alleged carpal tunnel syndrome. To conclude otherwise would be to reweigh the evidence, which the Court cannot do. *Newbold*, 718 F.3d at 1262.

Plaintiff argues that because the ALJ rejected the only medical opinion in the record on the

limiting effect of Plaintiff's carpal tunnel syndrome,[16] the ALJ was required to further develop the record. ECF 27 at 17–18. When the SSA has insufficient evidence or cannot reach a conclusion, it will take one or more steps to "resolve the inconsistency or insufficiency." 20 C.F.R. § 404.1520b(c)(1)-(4). This duty, however, is triggered upon "the inadequacy of the 'evidence,'" *not* the rejection of the physician's opinion. *White v. Barnhart*, 287 F.3d 903, 908 (10th Cir. 2001) (quoting 20 C.F.R. § 416.912(e)). It is the ALJ—not a physician—who is charged with determining the RFC. *Chapo v. Astrue*, 682 F.3d 1285, 1288 (10th Cir. 2012) (citing *Howard v. Barnhart*, 379 F.3d 945, 949 (10th Cir. 2004)).

And here the ALJ had sufficient evidence to assess how Plaintiff's carpal tunnel syndrome affected her ability to work. For instance, the ALJ observed that Plaintiff had a history of carpal tunnel syndrome. AR at 24 (citing *id.* at 937–46). In addition, the ALJ noted that after Plaintiff's 2017 surgery, she was described "as having complete resolution of symptoms with the right wrist and only some ring fingertip numbness on the left remaining." *Id.* at 25 (citing *id.* at 991). Moreover, the ALJ reported that Plaintiff "did not seek out any consistent treatment for [her carpal tunnel syndrome] symptomology thereafter, and the medical records do not detail any regular motor or sensory deficits of the hands." *Id.* In sum, the ALJ did not err in (1) considering Plaintiff's carpal tunnel syndrome and (2) deciding not to further develop the record.

## VI.  CONCLUSION

The ALJ committed reversible error by failing to elicit a reasonable explanation from the vocational expert on whether Plaintiff could perform the document preparer occupation,

---

[16] Consultative examiner Jared Lunkenheimer, M.D., opined that Plaintiff could perform manipulative activities "rarely." AR at 27 (citing *id.* at 945–46). The ALJ rejected Dr. Lunkenheimer's opinion because the surgery resolving Plaintiff's symptoms occurred on August 28, 2017, *id.* at 990, and Dr. Lunkenheimer examined Plaintiff a month earlier on July 7, 2017, *id.* at 939. *Id.* at 27.

specifically in light of Plaintiff's RFC limitation to simple work-related decisions and the DOT reasoning level that corresponds to this occupation. The Court rejects Plaintiff's alternative bases for remand.

**IT IS THEREFORE RECOMMENDED** that Plaintiff's Motion be **GRANTED** and that the Commissioner's final decision be (1) **REVERSED** and (2) **REMANDED** for further administrative proceedings.

**SO RECOMMENDED.**

_____

THE HONORABLE GREGORY J. FOURATT
UNITED STATES MAGISTRATE JUDGE

---

**THE PARTIES ARE FURTHER NOTIFIED THAT WITHIN 14 DAYS OF SERVICE** of a copy of these Proposed Findings and Recommended Disposition they may file written objections with the Clerk of the District Court pursuant to 28 U.S.C. § 636(b)(1)(c). Any request for an extension must be filed in writing no later than seven days from the date of this filing. **A party must file any objections with the Clerk of the District Court within the fourteen-day period if that party wants to have appellate review of the proposed findings and recommended disposition. If no objections are filed, no appellate review will be allowed**.